IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.                                                                         Criminal Action No. 3:04cr364

LEWIS E. BURRELL,
          Defendant.

## OPINION

In 2005, the Honorable James R. Spencer sentenced the defendant, Lewis E. Burrell, to twenty-two years' imprisonment for conspiracy to distribute crack cocaine and possessing a firearm in furtherance of a drug trafficking crime. In the decades since his sentencing, the laws surrounding crack cocaine offenses, and sentencing more generally, have changed. Burrell now asks the Court to consider those changes and reduce his sentence, immediately release him, or place him on home confinement.

Four motions currently pend before the Court. First, Fernando Groene, Burrell's court-appointed counsel, filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), addressing Burrell's eligibility for relief under 18 U.S.C. § 3582(c) and § 404(b) of the First Step Act based on his crack cocaine offenses. (ECF No. 79.) Second, Groene filed a motion to withdraw as counsel because, as explained in his *Anders* brief, he does not believe Burrell qualifies for relief. (ECF No. 78.) Third, Burrell filed a *pro se* motion for compassionate release in which he asks the Court to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A)(2) because extraordinary and compelling reasons exist to support a sentence reduction. (ECF No. 84.) Fourth, Burrell filed a motion to appoint counsel with respect to the motion for compassionate release. (ECF No. 85).

To reduce Burrell's sentence on any of the grounds he raised, the Court must perform a two-step analysis. First, it must consider whether the facts of Burrell's case make him eligible for

1

relief under the standard relevant to each provision. Then, if the Court determines he is eligible for relief under any of those provisions, it must consider whether the factors set forth in 18 U.S.C. § 3553(a) support reducing Burrell's sentence. As explained below, Burrell is only eligible for relief under § 404(b) of the First Step Act, but the § 3553(a) factors do not support reducing or otherwise modifying his sentence. The Court therefore will deny both Burrell's motion to reduce his sentence based on his crack cocaine offenses and his motion for compassionate release. Because the Court declines to modify Burrell's sentence and no right to counsel exists in post-conviction proceedings, the Court will grant Groene's motion to withdraw as counsel and will deny Burrell's motion to appoint counsel.

## I. BACKGROUND

From October 1, 2003, through May 31, 2004, Burrell—a member of the Broad Rock Boys gang—conspired with others to sell cocaine base, also known as crack cocaine. On May 31, 2004, Burrell and other Broad Rock Boys had a shootout with a rival gang as part of an ongoing turf war. An innocent bystander died during the shootout.

On November 17, 2004, the government filed an indictment, charging Burrell and a co-defendant with various drug and firearm offenses. On February 28, 2005, Burrell pleaded guilty to conspiracy to distribute 50 grams or more of crack cocaine, in violation of 18 U.S.C. § 846[1] (Count One), and use of a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Two). Burrell entered into a plea agreement pursuant to Federal Rule of Criminal Procedure (11)(c)(1)(C) (a "Type-C agreement")[2] in which the parties agreed to a twenty-two-year

---

[1] The conspiracy charge arises out of conduct associated with possession or distribution of more than 28g of crack cocaine, in violation of 18 U.S.C. § 841(b)(1)(B)(iii).

[2] Federal Rule of Criminal Procedure 11 permits a Type-C agreement to "specify that an attorney for the government will . . . agree that a specific sentence or sentencing range is the

2

term of imprisonment, comprising twelve years for Count One and ten years for Count Two. Burrell waived his rights to a presentence investigation report ("PSR") and to have the Court determine his sentence based on the United States Sentencing Guidelines. The United States Probation Office generated a PSR in 2005, but it did not calculate Burrell's guidelines and it did not send a copy of the PSR to the Court. The Court accepted the plea agreement and sentenced Burrell to the recommended twenty-two years' imprisonment.

In response to Amendment 750[3] of the Sentencing Guidelines, Burrell filed two letter motions for sentence reduction pursuant to 18 U.S.C. § 3582(c)(2)—one on February 15, 2008, and one on October 7, 2013. The Court denied both motions, explaining:

> [i]t is clear in this case that the sentence agreed to by the parties and imposed by the Court was not based on the Sentencing Guidelines. Burrell's Sentencing Guidelines were, in fact, never calculated, and the plea agreement itself stipulates that Burrell agreed to be sentenced without reference to the Sentencing Guidelines. Because Burrell's sentence was not based on subsequently lowered Sentencing Guidelines, he is not eligible for a sentence reduction pursuant to 18 U.S.C. § 3582(c).

(ECF No. 54, at 2; *see also* ECF No. 40.) Between 2019 and 2020, Burrell filed several letter motions asking the Court to appoint him counsel to determine his eligibility for relief under the First Step Act. (ECF Nos. 59–62). The Court granted the motions requesting counsel and appointed counsel to represent him with respect to his eligibility for relief under Section 404 of the First Step Act. (*See* ECF No. 63.) Groene moved to withdraw as his attorney and filed a brief

---

appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply." Fed. R. Crim. P. 11(c)(1)(C). Once the Court accepts the agreement, "the recommendation or request binds the court." *Id.*

[3] Amendment 750 of the Sentencing Guidelines implemented the Fair Sentencing Act by updating the Drug Quantity Table in § 2D1.1 and by eliminating the statutory penalties for simple possession.

pursuant to *Anders v. California*, 386 U.S. 738 (1967), explaining why Burrell does not qualify for relief. Burrell then filed a *pro se* motion for compassionate release due to his medical conditions and several other factors.

Burrell is currently serving his sentence at the Federal Correctional Institute ("FCI") McDowell. As of November 13, 2023, he has a projected release date of October 10, 2024.[4]

## II. DISCUSSION

Burrell seeks a sentence reduction on three grounds: (1) 18 U.S.C. § 3582(c)(2), (2) 18 U.S.C. § 3582(c)(1)(B) and § 404(b) of the First Step Act, and (3) the compassionate release provisions under 18 U.S.C. § 3582(c)(1)(A).[5] The Court addresses the standard under each provision first, and then analyzes the § 3553(a) factors second. As explained below, regardless of his eligibility for relief under any provision, the § 3553(a) factors do not support modifying Burrell's sentence.

### A. *18 U.S.C. § 3582(c)(2)*

#### *1. Legal Standard*

18 U.S.C. § 3582(c)(2) authorizes the Court to modify the sentence of "a defendant who has been sentenced to a term of imprisonment *based on* a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2) (emphasis added). Burrell entered a "Type-C" plea agreement that recommended a twenty-two-year sentence. "[A] sentence

---

[4] *See* Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last visited November 13, 2023).

[5] Groene introduced the brief as an analysis of Burrell's claims under the compassionate release provisions of § 3582(c)(1)(A) and § 404(b) but then relied almost entirely on § 3582(c)(2), a separate avenue for a sentence reduction. The government addressed Burrell's eligibility for relief under § 404(b) of the First Step Act. Burrell later filed a *pro se* motion under the compassionate release provisions. The Court will address all three avenues for relief.

4

imposed pursuant to a Type-C agreement is 'based on' the defendant's Guidelines range so long as that range was part of the framework the district court relied on in imposing the sentence or accepting the agreement." *Hughes v. United States*, 138 S. Ct. 1765, 1775 (2018). "In the typical sentencing case there will be no question that the defendant's Guidelines range was a basis for his sentence" because "[t]he Sentencing Reform Act requires a district court to calculate and consider a defendant's Guidelines range in every case." *Id.* But a defendant's eligibility for relief depends on "the reasons for the sentence that the district court imposed, not the reasons for the parties' plea agreement." *Id.* In other words, "[w]hat matters . . . is the role that the Guidelines played in the selection of the sentence eventually imposed." *Koons v. United States*, 138 S. Ct. 1783, 1788 (2018); *see also Molina-Martinez v. United States*, 578 U.S. 189, 200 (2016) ("The record in a case may show, for example, that the district court thought the sentence it chose was appropriate irrespective of the Guidelines range.").

### 2. *Analysis*

In his *Anders* brief, Groene asserts that § 3582(c)(2) bars Burrell's sentence from review because the Court imposed Burrell's sentence based on the Type-C plea agreement and not the Sentencing Guidelines. Burrell's Type-C plea agreement does not refer to a Guidelines range, and he specifically waived his right to have the Court determine his sentence in accordance with the Guidelines. The PSR the Probation Office prepared did not include a Guidelines calculation. Neither the Court nor the parties discussed the Guidelines at Burrell's sentencing. In its March 2014 Order denying Burrell's motion for § 3582(c)(2) relief, the Court confirmed that "the sentence agreed to by the parties and imposed by the Court was not based on the Sentencing Guidelines. Burrell's Sentencing Guidelines were, in fact, never calculated." (ECF No. 54, at 2.) The Court, therefore, did not impose a sentence "based on a sentencing range that has subsequently

been lowered by the Sentencing Commission," 18 U.S.C. § 3582(c)(2), and the Court cannot grant him relief under § 3582(c)(2).

### B. Section 404(b)

#### 1. Legal Standard

Burrell may also seek relief under § 3582(c)(1)(B) and § 404(b) of the First Step Act. Section 3582(c)(1)(B) allows the Court to "modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute." "[I]n determining eligibility under § 3582(c)(1)(B), courts must look to the applicable statute to determine 'the extent' to which modification is 'expressly permitted by [that] statute." *United States v. Wirsing*, 943 F.3d 175, 185 (4th Cir. 2019).

Section 404(b) provides that the Court "may, on motion of the defendant, . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222. "Covered offenses" include any "violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010." *Id.* § 404(a). In *Wirsing*, the Fourth Circuit held that "[section] 3582(c)(1)(B) is the appropriate vehicle for a First Step Act motion because the Act '*expressly* permits the court to' modify a term of imprisonment." 943 F.3d at 184 (quoting *United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010)). The decision to grant relief ultimately remains in the district court's discretion. *See* First Step Act § 404(c) ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.").

Burrell seeks relief for his charge for Count One, a violation of 21 U.S.C. § 846 (conspiracy to violate the provisions of 21 U.S.C. § 841(b)(1)(B)(iii)). Section 2 of the Fair Sentencing Act modified the statutory penalties for violations of 21 U.S.C. §§ 841(b)(1)(A)(iii) and (B)(iii) by

increasing the quantities of crack cocaine that trigger five- and ten-year mandatory minimums. The Fourth Circuit interprets the First Step Act as broadly applying to "[a]ll defendants who are serving sentences for violations of 21 U.S.C. § 841(b)(1)(A)(iii) and (B)(iii), and who are not excluded pursuant to the expressed limitations in Section 404(c) of the First Step Act." *Wirsing*, 943 F.3d at 183 (internal quotations omitted). And, relevant here, the Fourth Circuit has expressly held that the statute of conviction, not the offense conduct, governs eligibility. *See id.* at 182, 184–86 (adopting a "statute-of-conviction" theory that looks to whether the Fair Sentencing Act, by way of the First Step Act, lowered the applicable statutory penalties); *United States v. Gravatt*, 953 F.3d 258, 263 (4th Cir. 2020) ("[A]ll defendants who are serving sentences for violations of 21 U.S.C. § 841(b)(1)(A)(iii) and (B)(iii), and who are not excluded pursuant to the expressed limitations in Section 404(c) of the First Step Act, are eligible to move for relief under that Act." (quoting *Wirsing*, 943 F.3d at 186)).

## 2. *Analysis*

The government argues against modifying Burrell's sentence because a twenty-two-year term of imprisonment falls within the updated range for his offense. The government also posits several theories for why Burrell's charge does not qualify as "a covered offense" eligible for a reduction under § 404(b) that, in essence, ask the Court to ignore the Fourth Circuit's conclusion that the statute of conviction governs a defendant's eligibility for a sentence reduction.

Burrell pleaded guilty to conspiracy to distribute 50g or more of crack cocaine, 21 U.S.C. § 846; *see* 21 U.S.C. § 841(b)(1)(B)(iii). When the Court sentenced Burrell, an offense involving 50 grams of crack triggered a ten-year mandatory minimum and a maximum life sentence, § 841(b)(1)(A)(iii) (2005), *amended by* Fair Sentencing Act, Pub. L. 111-220, §§ 2(a), 4(a), 124 Stat. 2372 (2010). After the First Step Act, offenses involving 28 grams or more of crack cocaine

7

carry a minimum of five years' imprisonment and a maximum of forty years' imprisonment. *See* Fair Sentencing Act, Pub. L. No. 111-220, § 2, 124 Stat. 2372 (2010). Burrell therefore committed a "covered offense" under the First Step Act and qualifies for relief under § 3582(c)(1)(B) and § 404(b) because Section 2 of the Fair Sentencing Act modified the statutory penalties for that offense. *See Wirsing*, 943 F.3d at 186. But as discussed below, the § 3553(a) factors weigh against changing his sentence.

### C. *Compassionate Release*

Finally, Burrell requests compassionate release under 18 U.S.C. § 3582(c)(1)(A) due to his medical conditions and the heightened risk posed by the Coronavirus Disease 2019 ("COVID-19"), a sentencing disparity, and his rehabilitation.[6]

#### 1. *Compassionate Release Standard*

Section 3582(c)(1)(A), as amended by the First Step Act, authorizes a district court to modify a criminal defendant's sentence "if it finds that . . . extraordinary and compelling reasons warrant such a reduction," and "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable." "Prior to the First Step Act, a motion for compassionate release could only be brought by the Director of the [BOP]." *United States v. Garcia*, No. 6:05cr6, 2019 WL 4039638, at *2 (W.D. Va. Aug. 27, 2019). Section 603(b) of the First Step Act amended

---

[6] The Court will not direct the government to respond to Burrell's motion because neither his proffered reasons nor the § 3553(a) factors support his release.

In addition, Burrell has asked the Court to appoint him counsel for his compassionate release motion. (ECF No. 85.) No constitutional right to have appointed counsel in post-conviction proceedings exists. *Mackall v. Angelone*, 131 F.3d 442, 449 (4th Cir. 1997). The Court, however, may appoint counsel to a financially eligible person if justice so requires. *See United States v. Legree*, 205 F.3d 724, 730 (4th Cir. 2000); *cf.* 18 U.S.C. § 3006A(a)(2)(B) (providing interests of justice standard for appointment of counsel in similar post-conviction proceedings). Burrell does not demonstrate that justice requires the aid of counsel to properly present arguments regarding compassionate release to the Court, so the Court will deny the motion.

8

§ 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after he has "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).[7]

### 2. *Administrative Exhaustion*

Burrell exhausted his administrative remedies. "By its plain language, § 3582(c)(1)(A) requires defendants to first exhaust administrative remedies or wait thirty days after requesting that the warden of their facility file a motion for a sentence reduction; however, courts have waived this requirement when enforcing it would prove futile." *United States v. Feiling*, 453 F. Supp. 3d 832, 837 (E.D. Va. 2020). On December 8, 2021, Burrell submitted a request for compassionate release to prison officials, which the Warden denied on January 13, 2022. Burrell filed his motion for compassionate release after the Warden denied his request. He has therefore satisfied the administrative exhaustion requirements under § 3582(c)(1)(A).

---

[7] Although Congress did not define extraordinary and compelling reasons in § 3582(c)(1)(A), "the Sentencing Commission . . . addressed the issue in a policy statement, United States Sentencing Guideline § 1B1.13," which provided the BOP with several categories of "extraordinary and compelling reasons" to consider. *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020). For years following the passage of the First Step Act, the Sentencing Commission failed to update § 1B1.13 to account for motions filed by defendants, meaning the policy did not bind the courts when presented with a defendant's motion for compassionate release. *Id.* at 281–82, 284. A court therefore remained "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise." *Id.* (quoting *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020)) (alteration and emphasis in original). The Sentencing Commission, however, recently amended the Sentencing Guidelines to address motions brought by defendants and expanded the list of extraordinary and compelling reasons that support a sentence reduction, which took effect on November 1, 2023. The Fourth Circuit has yet to address the impact the amended Sentencing Guidelines have on *McCoy* and similar rulings or precisely how courts should apply the amended policy statement in motions for compassionate release, particularly motions filed before November 1, 2023. The Court need not reach this question, however, because Burrell has failed to establish an extraordinary and compelling reason to reduce his sentence applying both the case law before November 1, 2023, and the amended Sentencing Guidelines.

9

### 3. *Extraordinary and Compelling Reasons*

#### i. *Medical Conditions*

First, Burrell argues that his B-12 deficiency and low blood levels, combined with the COVID-19 pandemic, create an extraordinary and compelling reason justifying his release. Specifically, Burrell argues that COVID-19 spreads rapidly in prisons because the inmates are closely confined, putting him at particular risk of contracting the virus. And he argues that his slight stature and weight make him particularly susceptible to serious illness or death if he contracts COVID-19. Furthermore, Burrell claims that the BOP medical staff administered improper care and prescribed incorrect medications for his restless leg syndrome.

During the COVID-19 pandemic, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *Feiling*, 453 F. Supp. 3d at 841.[8] In other words, the typical arguments for release from prison based on the COVID-19 pandemic depend on assertions that (1) "the risk of contracting COVID-19 in a prison is higher than the risk outside the prison" and (2) "the inmate's preexisting medical condition increases that individual's risk of experiencing a serious, or even fatal, case of COVID-19." *High*, 997 F.3d at 185. The amended Sentencing Guidelines likewise consider it extraordinary and compelling when a defendant is housed at a facility "affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency," the

---

[8] *See also United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021) ("The underlying arguments for release from prison based on the coronavirus pandemic depend at least on allegations that the risk of contracting COVID-19 in a prison is higher than the risk outside the prison and that the inmate's preexisting medical condition increases that individual's risk of experiencing a serious, or even fatal, case of COVID-19.").

defendant "is at increased risk of suffering severe medical complications or death as a result of exposure" to the infectious disease or public health emergency, and the "risk cannot be adequately mitigated in a timely manner." U.S.S.G. § 1B1.13(b)(1)(D). Here, Burrell has not shown he meets either criterion.

The Centers for Disease Control and Prevention ("CDC") does not include anemia, B-12 deficiency, low blood levels, or slim build as conditions that increase the likelihood of contracting COVID-19, so Burrell fails to demonstrate that he has a particular susceptibility to the virus or risk of severe medical complications or death as a result of the virus.[9] *See People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention, http://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited November 13, 2023). But even if Burrell's medical conditions make him more susceptible to the virus or severe complications, he does not show that he faces a particular risk of contracting COVID-19 while incarcerated at FCI McDowell or that BOP cannot adequately mitigate that risk. The confined and sometimes crowded environments of prisons can create a special risk of contracting infectious diseases. But the BOP currently reports no active COVID-19 cases in inmates at FCI McDowell and has fully vaccinated 870 inmates.[10] Further, FCI McDowell currently functions at a normal operational level based on its low isolation rate and community positive cases. *See* FCI McDowell,

---

[9] Burrell argues that he has "pernicous [sic] anemia – which is the cousin to sickle cell," a type of hemoglobin blood disorder. (ECF No. 84, at 1.) The CDC lists a hemoglobin blood disorder, such as sickle cell disease, as a medical condition that can make a person more susceptible to COVID-19. Even if Burrell demonstrated that pernicious anemia qualifies as a hemoglobin blood disorder sufficient to establish a particularized susceptibility to COVID-19, as explained below, he has failed to show a particularized risk of contracting COVID-19 while in prison and that the § 3553(a) factors support granting his motion.

[10] *Inmate COVID-19 Data*, Bureau of Prisons, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited November 13, 2023).

11

https://www.bop.gov/locations/institutions/mcd/ (last visited November 13, 2023). Considering that the BOP appears to have dealt with and successfully mitigated a COVID-19 outbreak at FCI McDowell, Burrell does not show that he is at a particular risk of contracting COVID-19 while incarcerated there or that BOP has failed to adequately mitigate that risk. *See United States v. Lloyd*, No. 2:11cr36, 2020 WL 4501811, at *4 (E.D. Va. Aug. 5, 2020).

Furthermore, although Burrell expresses dissatisfaction with his medical care, he has not established that the BOP lacks resources to adequately manage his medical needs. S*ee, e.g., United States v. Smith*, No. 3:15-cr-101, 2021 WL 3641463, at *2 (E.D. Va. Aug. 17, 2021) ("[C]hronic conditions that can be managed in prison are not a sufficient basis for compassionate release." (internal quotation omitted)). Nor has he established that his medical conditions "diminish[] [his] ability . . . to provide self-care within the environment of a correctional facility and [are conditions] from which he . . . is not expected to recover," or that he requires "long-term or specialized medical care that is not being provided and without which [Buirrell] is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(B)–(C). Burrell argues that the BOP has mistreated his restless leg syndrome, a chronic condition within the BOP's capacity to manage, but he fails to provide any medical or other evidence to support his claim or establish the requisite seriousness and impact on his health. None of Burrell's medial conditions, therefore, amount to an extraordinary and compelling reason to justify modifying his sentence.

### ii. *Other Arguments*

Burrell makes two other arguments to support his request. First, he asserts that "if [he] would have committed the same crime today [he] would not have received the same amount of time." (ECF No. 84, at 3.) Presumably Burrell means that he would have received a lower sentence under the Fair Sentencing Act and the First Step Act. As explained above, although

Congress changed the relevant statutory range, Burrell's sentence still falls within the new range of five to forty years' imprisonment. *See* 21 U.S.C. 841(b)(1)(B)(iii). Moreover, for the same reason explained below in the Court's § 3553(a) analysis, Burrell's individual circumstances and the nature of his crime do not suggest that he would have received a significantly lower sentence but for the higher penalties in place at the time of his sentencing. *See* U.S.S.G. § 1B1.13(b)(6). His eligibility for a sentence reduction therefore does not itself create a sentencing disparity between the sentence imposed and what he might receive today. *See id.*

Second, Burrell argues that he has "rehabilitated [himself] by obtaining [his] GED, taking several classes, working in UNICOR, and . . . publish[ing] [his] first novel." (ECF No. 84.) He asserts that lockdowns associated with COVID-19 have limited his access to resources and classes. "[A] petitioner's rehabilitation alone does not provide sufficient grounds to warrant a sentence modification." *United States v. Hill*, No. 3:14cr114, 2020 WL 6049912, at *3 (E.D. Va. Oct. 13, 2020) (citing 28 U.S.C. § 994(t)); *see also* U.S.S.G. § 1B1.13(d) "[R]ehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for the purposes of this policy statement."). Nevertheless, a court must "provide an individualized explanation for why [a defendant's] steps toward rehabilitation are meaningless." *United States v. Martin*, 916 F.3d 389, 397 (4th Cir. 2019); *see* U.S.S.G. § 1B1.13(d) ("[R]ehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted."). As explained in the § 3553(a) analysis, Burrell's lengthy record of infractions while in prison undercut any argument that he has rehabilitated himself to the extent he argues here. Moreover, this record in combination with his other proffered reasons do not, in the aggregate, meet this standard.

Accordingly, these other reasons do not provide an extraordinary and compelling reason to support a sentence reduction under § 3582(c)(1)(A).

### *D. Section 3553(a) Factors*

At a minimum, Burrell is eligible for a sentence reduction under § 404(b), so the Court must next consider whether the § 3553(a) factors support reducing his sentence, placing him in home confinement, or releasing him.[11] The government argues that, even if Burrell qualifies for First Step Act relief, the seriousness of his offense and his poor conduct while incarcerated suggest Burrell poses a risk of harm to the public if released.

18 U.S.C. § 3553(a) requires that a district court impose a sentence that is "sufficient, but not greater than necessary" to achieve certain goals. *See United States v. Troy*, 64 F.4th 177, 185 (4th Cir. 2023) ("[F]or its resolution of a First Step Act motion to be procedurally reasonable, a district court must 'consider a defendant's arguments, give individual consideration to the defendant's characteristics in light of the § 3553(a) factors, determine—following the Fair Sentencing Act—whether a given sentence remains appropriate in light of those factors, and adequately explain that decision." (quoting *United States v. Collington*, 995 F.3d 347, 360 (4th Cir. 2021))). Most relevant here, the sentence must reflect "the nature and circumstances of the offense," "the history and characteristics of the defendant," and the need for the sentence "to reflect the seriousness of the offense . . . promote respect for the law"; "adequate[ly] deter[]" the defendant from further criminal conduct; and "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1)–(2). Granting Burrell's motions would not serve these goals.

---

[11] Although the Court concludes that Burrell can only seek relief under § 404(b) of the First Step Act, these same reasons would also support denying Burrell's motion under § 3582(c)(2) and his motion for compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A)(i) (requiring the court to consider the § 3553(a) factors before granting a sentence reduction); *id.* § 3582(c)(2) (same).

14

Burrell committed a serious offense that involved more than just drug distribution—it also involved a shootout with a rival gang that ended in the death of an innocent bystander. At sentencing, defense counsel conceded that Burrell fired the AK-47 that killed the bystander. (ECF No. 58, at 14.) And although the government represented to the sentencing judge that Burrell had no criminal history, the PSR contains ten pages of prior offenses, including armed robbery and grand larceny. (ECF No. 52, at 9–19; ECF No. 58, at 16.) Moreover, Burrell's behavior while incarcerated has led to thirty-nine disciplinary reports since 2006, and he continues to abuse drugs and alcohol. (ECF No. 83-1, at 2–5.) This suggests that Burrell presents a risk to the public if released early.[12] Additionally, the sentencing judge accepted the twenty-two-year sentence specified by the parties in Burrell's plea agreement, which falls within the current statutory penalty range as amended by the Fair Sentencing Act and reflects an appropriate sentence considering the details of his offense. Requiring Burrell to serve his sentence that falls within the current statutory range will promote respect for the law and is necessary to deter him from continuing to engage in prohibited behavior and illegal conduct. The § 3553(a) factors, therefore, do not support reducing Burrell's sentence, granting is immediate release, or placing him on home confinement.

### III. CONCLUSION

In sum, regardless of Burrell's eligibility for relief under § 3582(c)(1)–(2) or § 404(b), the § 3553(a) factors do not support reducing Burrell's sentence. Accordingly, the Court will deny Burrell's motions. (ECF Nos. 79, 84.) The Court will grant Groene's motion to withdraw as counsel with respect to his eligibility for relief under § 404(b). (ECF No. 78.) The Court will

---

[12] For this same reason, even if an extraordinary and compelling reason existed as defined by the amended Sentencing Guidelines, the Court cannot conclude that Burrell "is not a danger to the safety of any other person or to the community," a finding required before the Court can grant relief under the amendments. U.S.S.G. § 1B1.13(a)(2).

deny Burrell's motion to appoint counsel with respect to his motion for compassionate release, (ECF No. 85), because Burrell has not demonstrated a need counsel in those proceedings.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record and to the defendant.

Date: 15 November 2023
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge